IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| LAUREN MOSELEY, | ) |
| Plaintiff, | ) |
| v. | ) CIVIL CASE NO. 2:23-cv-683-ECM |
| | ) [WO] |
| BIG'S TRUCKING, *et al.*, | ) |
| Defendants. | ) |

**MEMORANDUM OPINION and ORDER**

**I. INTRODUCTION**

Now pending before the Court is Defendant AmerisourceBergen Drug Corporation's ("ABDC") motion for summary judgment. (Doc. 56). Lauren Moseley (the "Plaintiff") brings two causes of action against ABDC stemming from a series of March 2022 vehicular accidents: negligence (Count VIII) and wantonness (Count IX). (Doc. 1-2 at 15–16, paras. 61–67).[1] ABDC argues that summary judgment should be granted on both Counts VIII and IX because the claims are preempted by federal law. The Plaintiff opposes ABDC's motion arguing that her claims are not preempted. The motion is fully briefed and ripe for review. For the reasons that follow, ABDC's motion for summary judgment (doc. 56) is due to be GRANTED.[2]

---

[1] For clarity, the Court refers to the document and page numbers generated by CM/ECF.

[2] This Court granted ABDC's motions for summary judgment on preemption grounds in two other cases arising out of the same series of vehicular accidents. (*See* doc. 118 in *Bradley v. Big's Trucking*, 2:23-cv-122-ECM (Sept. 4, 2024)); (*see also* doc. 96 in *Moseley v. Big's Trucking*, 2:23-cv-262-ECM (Sept. 4, 2024)).

## II. JURISDICTION AND VENUE

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Personal jurisdiction and venue are uncontested, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

## III. STANDARD OF REVIEW

"Summary judgment is proper if the evidence shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1311 (11th Cir. 2018) (quoting FED. R. CIV. P. 56(a)). "[A] court generally must 'view all evidence and make all reasonable inferences in favor of the party opposing summary judgment.'" *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1252 (11th Cir. 2016) (citation omitted). However, "conclusory allegations without specific supporting facts have no probative value." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924–25 (11th Cir. 2018) (citation omitted). If the record, taken as a whole, "could not lead a rational trier of fact to find for the non-moving party," then there is no genuine dispute as to any material fact. *Hornsby-Culpepper*, 906 F.3d at 1311 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of demonstrating that there is no genuine dispute as to any material fact, and the movant must identify the portions of the record which support this proposition. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); FED. R. CIV. P. 56(c). The movant may carry this burden "by demonstrating that the nonmoving party has failed to present sufficient evidence to support an essential element

2

of the case." *Id.* at 1311. The burden then shifts to the nonmoving party "to establish, by going beyond the pleadings, that a genuine issue of material fact exists." *Id.* at 1311–12. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. Nonmovants must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A) & (B).

In determining whether a genuine issue for trial exists, the court must view all the evidence in the light most favorable to the nonmovant. *Fla. Int'l Univ. Bd. of Trs.*, 830 F.3d at 1252. Likewise, the reviewing court must draw all justifiable inferences from the evidence in the nonmoving party's favor. *Id.* However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam).

## IV. BACKGROUND

This matter arises from a series of vehicular accidents that occurred in Lowndes County, Alabama. On March 13, 2022, a collision caused all northbound traffic to completely stop on Interstate 65 ("I-65") near mile marker 154. Following this collision, at approximately 3:44 p.m., a tractor-trailer driven by Defendant Ricky Gray ("Gray") crashed into a line of stopped vehicles, which included a vehicle operated by Charasma

Moseley, in which the Plaintiff was a passenger. (Doc. 1-2 at 7, para. 20). The Plaintiff allegedly sustained severe physical injuries in the accident. (*Id.* at 10, para. 33). The Plaintiff subsequently filed this lawsuit in the Circuit Court of Lowndes County, Alabama on September 8, 2023. (*Id.* at 3). ABDC removed the case to federal court on November 11, 2023. (Doc. 1).[3]

According to Gray, he was working for Big's Trucking[4] and driving from Commercial Express Inc.'s ("Commercial Express") warehouse in Pensacola, Florida to ABDC's distribution center in Buford, Georgia. (Doc. 56-2 at 10, 29:7–9; *id.* at 15, 49:16–51:12). ABDC contracted with Commercial Express to transport its products. Because Commercial Express had no transport trucks of its own, it contracted with hundreds of vendors across the country to transport goods for a variety of customers. In 2009, Commercial Express entered into a contractual agreement with Kenneth Branch on Branch LLC's behalf. Branch LLC then coordinated with Pamela Tarter and Jeffrey Tarter d/b/a Big's Trucking for Gray to drive the tractor-trailer involved in the March 13, 2022 crash.

---

[3] The Defendants are: ABDC, Commercial Express, Inc., Ricky Gray, Big's Trucking, Pamela Tarter, Jeffrey Tarter, Outlaw Express, LLC, and several fictitious defendants. (*See generally* doc. 1-2). State Farm Mutual Automobile Insurance Company, Garrison Property and Casualty Insurance Company, and Christopher Ivan Harris were dismissed before this Opinion. (*See* docs. 39 & 60). Only ABDC moved for summary judgment.

[4] In his deposition, Gray stated that Outlaw Express, LLC rebranded as Big's Trucking. (Doc. 56-2 at 10, 29:7–21). This rebranding occurred approximately between 2018 and 2019. (Doc. 61 at 4). Brian Lipford was the manager and registered agent of Outlaw Express, LLC before its dissolution. (Doc. 1-14 at 2, para. 1).

The Plaintiff asserts claims of negligence and wantonness under Alabama state law against ABDC for the selection and supervision of Gray, along with its alleged failure to comply with Federal Motor Carrier Safety regulations. (Doc. 1-2 at 15–16, paras. 61–67).

## V.  DISCUSSION

ABDC moves for summary judgment because the Plaintiff's claims are preempted by federal law. (Doc. 57 at 15). Specifically, ABDC contends that the Federal Aviation Administration Authorization Act of 1994's ("FAAAA") preemption provision, 49 U.S.C. § 14501(c)(1), applies and that its subsequent savings clause, 49 U.S.C. § 14501(c)(2)(A), does *not* apply. (*Id.* at 15–23). Because this issue is dispositive, the Court's analysis of ABDC's motion for summary judgment begins—and ends—with preemption.[5]

Under the Supremacy Clause, the United States Constitution and federal law "made in Pursuance thereof" are the "supreme law of the Land." U.S. Const. art. VI, cl. 2. Thus, the Supremacy Clause invalidates any "state laws that 'interfere with, or are contrary to' federal law." *Aspen Am. Ins. Co. v. Landstar Ranger, Inc.*, 65 F.4th 1261, 1266 (11th Cir. 2023) (quoting *Gibbons v. Ogden*, 22 U.S. 1, 211 (1824)). "Put simply, federal law preempts contrary state law." *Hughes v. Talen Energy Mktg., LLC*, 578 U.S. 150, 162 (2016). This Court may consider preemption when evaluating a motion for summary judgment. *See Bartholomew v. AGL Res., Inc.*, 361 F.3d 1333, 1337 (11th Cir. 2004). The Eleventh Circuit recognizes three types of preemption in which state law must yield to

---

[5] ABDC also argues that the Plaintiff's claims fail "because a party is not liable for the torts of its independent contractors." (Doc. 57 at 26). Because the Plaintiff's claims are preempted, the Court pretermits discussion regarding ABDC's additional summary judgment arguments. (*See generally id.* at 33–38).

federal law: express preemption, field preemption, and conflict preemption. *Aspen*, 65 F.4th at 1266 (citing *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1094 (11th Cir. 2021)). Here, the Court only considers express preemption, which "occurs when Congress displaces state law 'by so stating in express terms.'" *Id.* (quoting *Taylor v. Polhill*, 964 F.3d 975, 981 (11th Cir. 2020)).

The FAAAA expressly preempts contrary state law and bars states from "enact[ing] or enforc[ing] a law, regulation, or other provision having the force and effect of law related to a price, route, or *service* of any motor carrier . . . , broker, or freight forwarder with respect to the transportation of property." 49 U.S.C. § 14501(c)(1) (emphasis added). After concluding that state governance of intrastate transportation of property burdened interstate commerce and American consumers, Congress enacted the FAAAA's preemption provision to limit states' reach into the trucking industry. *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 256 (2013) (citing *City of Columbus v. Ours Garage & Wrecker Serv., Inc.*, 536 U.S. 424, 440 (2002)). In *Dan's City Used Cars, Inc.*, the Supreme Court held that § 14501(c)'s phrase "related to a price, route, or service of any motor carrier" embraces state laws that have "a connection with or reference to carrier rates, routes, or *services*, whether directly or indirectly." *Id*. at 260 (quotations omitted) (emphasis added). Put differently, the breadth of the preemption provision is expansive. *See Aspen*, 65 F.4th at 1266–67.

Although the FAAAA's preemption provision is expansive, it is not without limit. For example, though "a connection with or reference to carrier rates, routes, or services" may be direct or indirect, it does not preempt state laws that do so "in only a 'tenuous,

6

remote, or peripheral . . . manner.'" *Dan's City Used Cars, Inc.*, 569 U.S. at 261 (quoting *Rowe v. New Hampshire Motor Transp. Ass'n*, 552 U.S. 364, 371 (2008)).  In addition, the FAAAA's preemption provision "shall not restrict the safety regulatory authority of a State with respect to motor vehicles . . . or the authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization." 49 U.S.C. § 14501(c)(2)(A).  This savings clause's first component ("shall not restrict the safety regulatory authority of a State with respect to motor vehicles") is known as the FAAAA's "safety exception." *Aspen*, 65 F.4th at 1268. And for the safety exception to apply to negligence claims, (1) the negligence standard must constitute an exercise of the state's "safety regulatory authority," and (2) that authority must have been exercised "with respect to motor vehicles." *Id.*

In enacting the FAAAA's express preemption provision, Congress borrowed language from the Airline Deregulation Act of 1978 ("Airline Deregulation Act"), which sought to deregulate the domestic airline industry years earlier. *Aspen*, 65 F.4th at 1266 n.2; *see also Dan's City Used Cars, Inc.*, 569 U.S. at 255–56.  Because the sole difference between the Airline Deregulation Act and FAAAA preemption provisions is the FAAAA's inclusion of the phrase "with respect to the transportation of property," the Eleventh Circuit looks to Airline Deregulation Act preemption case law to interpret the FAAAA preemption provision at issue here. *Aspen*, 65 F.4th at 1266 n.2 (citation omitted).

The FAAAA's preemption provision expressly references industry participants, including motor carriers, brokers, and freight forwarders.  One relevant industry participant, a "shipper" is the "'person who . . . owns the goods being transported'—like a

7

manufacturer, retailer, or distributor," *id.* at 1264 (quoting 49 U.S.C. § 13102(13)); a "broker" is "one who 'sells, offers for sale, negotiates for, or holds itself out . . . as selling, providing, or *arranging for, transportation by motor carrier* for compensation,'" *id.* at 1267 (quoting 49 U.S.C. § 13102(2) (emphasis in original)); a "motor carrier" is "a person providing motor vehicle transportation for compensation," 49 U.S.C. § 13102(14); and a "freight forwarder" is "a person holding itself out to the general public . . . to provide transportation of property for compensation," who typically "assembles and consolidates . . . shipments," and "assumes responsibility for the transportation from the place of receipt to the place of destination[,] and [] uses for any part of the transportation a carrier . . ." *id.* § 13102(8). The FAAAA further defines "transportation" to include "services related to" "*the movement of* . . . property," "including *arranging for*, receipt, delivery, elevation, transfer in transit, . . . and interchange of . . . property." *Aspen*, 65 F.4th at 1267 (emphasis in original) (citing 49 U.S.C. § 13102(23)).

The Court proceeds to whether the FAAAA preempts the Plaintiff's claims against ABDC. To do so, the Court considers whether the Plaintiff's claims fall within the scope of the FAAAA's preemption clause and whether those same claims fall outside the scope of the FAAAA's safety exception. Importantly, this means that the Court must assess the type of claims asserted by the Plaintiff, rather than the precise factual scenario surrounding the claims. *See Gauthier v. Hard to Stop LLC*, 2024 WL 3338944, at *2 (11th Cir. July 9, 2024) (per curiam) ("Our holding in *Aspen* that a challenge to a broker's front-end selection of a motor carrier is preempted in no way turned on the back-end injury suffered

as a result of the allegedly negligent selection.").[6] As such, though the motion at issue is for summary judgment, the Court references the Plaintiff's operative complaint to elucidate the types of claims which the Plaintiff asserts against ABDC and not to determine factual issues. At the same time, the Court keeps in mind that "[a] plaintiff may not amend [their] complaint through argument in a brief opposing summary judgment." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004).

**A.     FAAAA Preemption**

In her operative complaint, the Plaintiff describes ABDC as being a "broker and/or shipper for the load being transported . . . at the time of the crash" (doc. 1-2 at 5, para. 8) that breached its "duty of care by hiring and/or contracting with Defendants Big's Trucking, Outlaw Express[, LLC], Pamela Tarter, Jeffrey Tarter, and/or Fictitious Defendants to transport . . . a load of cargo from Buford, Georgia[,] when [those] Defendants . . . had a demonstrated disregard for safety and compliance with [the Federal Motor Carrier Safety Act]." (*Id.* at 9, para. 28).

The Plaintiff's complaint sounds in Alabama law. The FAAAA—federal law— preempts state-law claims regarding negligent hiring of a motor carrier in a personal injury case. In *Aspen*, the Eleventh Circuit examined the FAAAA's preemption provision in the context of a cargo theft and held that a state law negligent hiring claim is connected to broker services regarding the transportation of property. Thus, such a claim is preempted by the FAAAA. *Aspen*, 65 F.4th at 1264, 1272. The FAAAA's preemption provision

---

[6] The Court here, and elsewhere in the Opinion, cites to nonbinding authority. While the Court recognizes that these cases are not precedential, the Court finds them persuasive.

expressly applies when a claim relates to the "*service* of any motor carrier . . . , broker, or freight forwarder with respect to the transportation of property." 49 U.S.C. § 14501(c)(1) (emphasis added).  In *Aspen*, the selection of a motor carrier to transport shipments, "is precisely the brokerage service that" a negligent hiring claim against a broker challenges: the broker's "allegedly inadequate selection of a motor carrier to transport . . . shipment[s]." *See Aspen*, 65 F.4th at 1267.  Indeed, an allegation of negligence "against a transportation broker for its selection of a motor carrier to transport property in interstate commerce" relates to a broker's "core transportation-related services." *Id.* at 1268.  Accordingly, *Aspen* held that a plaintiff's state law negligent hiring claim against a broker is preempted by § 14501(c)(1) of the FAAAA. *Id.* at 1268, 1272.  Similarly, the Plaintiff's state law negligent hiring claims against ABDC are preempted.

**B.     FAAAA's Safety Exception**

The Court next considers whether the FAAAA's safety exception applies to the Plaintiff's claims against ABDC.  The FAAAA's preemption provision "shall not restrict the safety regulatory authority of a State *with respect to motor vehicles*." 49 U.S.C. § 14501(c)(2)(A) (emphasis added).  Although the FAAAA's preemption provision is limited by the safety exception, that limit does not apply here because claims regarding negligent hiring are not "with respect to motor vehicles." *Aspen*, 65 F.4th at 1272.  Here, the gravamen of the Plaintiff's claims against ABDC are its selection of a motor carrier while it was acting as a "broker and/or shipper." The preemption clause of § 14501(c)(1) is designed to capture this exact scenario because, like *Aspen*, the claims stem from an entity's "core transportation-related services" and do not directly

relate to a motor vehicle, even if ABDC acted solely as a shipper.[7] *See id.* at 1268, 1272; *Creagan v. Wal-Mart Transp., LLC*, 354 F. Supp. 3d 808, 813 n.6 (N.D. Ohio 2018) ("Although Wal-Mart is a shipper rather than a broker, the negligent hiring claim against Wal-Mart stems entirely from Kirsch's broker services [of hiring the motor carrier]. Because the claim against Wal-Mart indirectly attempts to regulate broker services, it must be preempted as well."); *Rowe*, 552 U.S. at 372, 377 (holding the FAAAA preempted a Maine regulation on shippers because it would ultimately result in carriers altering their services).

The Plaintiff argues that *Aspen* is only applicable to claims involving cargo theft and not claims that involve tort claims for personal injury. (Doc. 61 at 10–12). Recently, a panel of the Eleventh Circuit found such arguments to be unavailing. *Gauthier*, 2024 WL 3338944, at *2. Specifically, the panel wrote:

> [The plaintiff] also contends that cases arising from traffic accidents (like this one) should be treated differently than cases arising from property loss (like *Aspen*). But the nature of the injury is not what matters for purposes of the [FAAAA's] preemption provision. Any claim that a broker negligently selected a driver to haul a load of property clearly falls within Section 14501(c)(1) because, as just noted, that claim seeks to regulate the broker's "performance of [its] core transportation-related services." [*Aspen*, 65 F.4th at 1268.] And such claims do not arise from an exercise of "the safety regulatory authority of a State with respect to motor vehicles," 49 U.S.C. § 14501(c)(2)(A), which requires that the relevant state law "have a *direct* relationship to motor vehicles," *Aspen*, 65 F.4th at 1271. We made that clear in *Aspen* by holding that negligent-selection-of-broker claims *necessarily* lack a direct relationship because "the services [a broker] provides have no direct connection to motor vehicles." *Id.* at 1272 (quoting *Miller*[*v. C.H.*

---

[7] The Plaintiff's complaint also references ABDC's failure to "verify the existence of active insurance . . . of Defendants Big's Trucking and/or Outlaw Express[, LLC]." (Doc. 1-2 at 15, para. 62(b)). Contentions regarding the alleged failure to verify adequate insurance coverage are also preempted because they are included within the same claim(s) as the alleged negligent/wanton hiring because conduct regarding the verification of insurance coverage is encapsulated by the "services" of such actors. *See Enbridge Energy, LP v. Imperial Freight Inc.*, 2019 WL 1858881, at *2 (S.D. Tex. Apr. 25, 2019) (citing *Huntington Operating Corp. v. Sybonney Exp., Inc.*, 2010 WL 1930087, at *3 (S.D. Tex. May 11, 2010)).

> *Robinson Worldwide, Inc.*], 976 F.3d [1016,] 1031 [(9th Cir. 2020)] (Fernandez, J., concurring in part and dissenting in part)). Our holding in *Aspen* that a challenge to a broker's front-end selection of a motor carrier is preempted in no way turned on the back-end injury suffered as a result of the allegedly negligent selection.

*Id.* (emphases in original). Particularly persuasive to this Court is the factual similarities between the allegations in *Gauthier* and the Plaintiff's allegations against ABDC. *Compare id.* at *1 (stating that the *Gauthier* plaintiff alleged that the broker failed to "ensure that the motor carriers with whom it arranged transportation of goods were reasonably safe") *with* (doc. 1-2 at 9, para. 28) ("[ABDC] . . . negligently/wantonly breached [its] duty of care by *hiring* and/or contracting with . . . [the] Defendants to transport a load of cargo[.]") (emphasis added). The Court finds the Plaintiff's argument distinguishing *Aspen* unpersuasive. *Aspen* remains binding precedent. The Court follows it and its application in *Gauthier*, despite *Gauthier* being unpublished and not binding. *Gauthier* clarified what *Aspen* already held.

Considering *Aspen* and *Gauthier*, the evidentiary record indicates that ABDC did not directly select Big's Trucking, Outlaw Express, LLC, Pamela Tarter, and Jeffrey Tarter to transport ABDC's products. Instead, the record reveals that ABDC (acting as a shipper) selected Commercial Express (acting as a motor carrier/freight forwarder), which in turn selected Branch LLC, until the hiring of Big's Trucking or Outlaw Express, LLC as the ultimate motor carrier which, as alleged by the Plaintiff, was problematic. (Doc. 61 at 3–5) (The Plaintiff's response describing the relationships among the various parties); (doc. 56-7) (carrier service agreement between ABDC and Commercial Express); (doc. 56-5 at 6, 14:6–15:5); (doc. 1-2 at 9, para. 28). Thus, the Plaintiff attempts to hold ABDC (the

12

shipper) liable for the selection of a motor carrier by an entity at some point in the chain between ABDC and Gray—a claim which is preempted regardless of which entity in the chain made the problematic selection. *See Creagan*, 354 F. Supp. 3d at 813 n.6 ("Although Wal-Mart is a shipper rather than a broker, the negligent hiring claim against Wal-Mart stems entirely from Kirsch's broker services [of hiring the motor carrier]. Because the claim against Wal-Mart indirectly attempts to regulate broker services, it must be preempted as well.").

Again, even if the Court only considered the Plaintiff's complaint and ignored the evidentiary record,[8] the Court would reach the same conclusion because the Plaintiff's claims in her complaint stem from ABDC's alleged negligent selection of a motor carrier to transport property in interstate commerce. In other words, ABDC essentially acted as a broker by selecting a carrier, as acknowledged by the Plaintiff's complaint referring to ABDC as a "broker and/or shipper." (*See* doc. 1-2 at 4–5, para. 8). Accordingly, while officially a shipper, holding ABDC liable for its alleged selection of a motor carrier would allow states to indirectly intervene into the services market of the trucking industry in a manner which the FAAAA sought to prevent. *See Creagan*, 354 F. Supp. 3d at 813 n.6; *Rowe*, 552 U.S. at 372; *see also Aspen*, 65 F.4th at 1267 (citing *Rowe*, 552 U.S. at 370).

At bottom, the claims against ABDC by the Plaintiff stem from the actions of entities acting as motor carriers or freight forwarders, entrusted with arranging and

---

[8] While this standard is more like the standard used for a motion to dismiss and not summary judgment, the Court uses this hypothetical to underscore that the Plaintiff's claims would be preempted regardless of the evidentiary standard used or evidence considered by the Court.

13

4

transporting ABDC's products and selecting other motor carriers. The claims against ABDC by the Plaintiff are expressly preempted by the FAAAA, as codified at § 14501(c)(1), and the safety exception in § 14501(c)(2)(A) does not apply here because the Plaintiff's negligent hiring claims are not "with respect to motor vehicles." *See Aspen*, 65 F.4th at 1272. Therefore, ABDC's motion for summary judgment (doc. 56) is due to be GRANTED.

## VI. CONCLUSION

For the reasons discussed above, it is

ORDERED that ABDC's motion for summary judgment (doc. 56) is GRANTED, and all claims against ABDC are DISMISSED.

DONE this 23rd day of April, 2025.

                                        /s/ Emily C. Marks
                                    EMILY C. MARKS
                                    CHIEF UNITED STATES DISTRICT JUDGE